# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

       Plaintiff,

   vs.                            No. 1:23-cr-1617-WJ

JASON ROPER,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS UNDER THE SPEEDY TRIAL ACT</u>

**THIS MATTER** is before the Court on Defendant Jason Roper's Motion to Dismiss for Violations of the Speedy Trial Act (**Doc. 57**) and the United States' Response (**Doc. 78**). Having reviewed the pleadings and the applicable law, the Court concludes the United States did not violate Defendant's statutory[1] right to a speedy trial. The motion is **DENIED**.

## LEGAL STANDARD

The purpose of the Speedy Trial Act is to assist courts in protecting the interests embodied in the Speedy Trial Clause of the Constitution. *United States v. Loud Hawk*, 474 U.S. 302, 304 n.1 (1986). Under the Act, the Government must indict a Defendant within thirty days of the arrest. 18 U.S.C. § 3161(b). The Act also requires Defendants be brought to trial within seventy days of their indictment.[2] 18 U.S.C. § 3161(c)(1). Naturally, of course, the Act allows for the exclusion of

---

[1] Defendant's motion makes clear that his claim is "solely asserted under the Speedy Trial Act," **Doc. 57 at 1**, therefore, the Court does not address any constitutional right to a speedy trial under the Sixth Amendment.

[2] Technically, the Act requires that a federal criminal defendant be tried within 70 days of the indictment "*or initial appearance, whichever occurs later.*" *United States v. Keith*, 61 F.4th 839, 845 (10th Cir. 2023) (emphasis added).

certain periods of delay from these time periods. *United States v. Hicks*, 779 F.3d 1163, 1170 (10th Cir. 2015); 18 U.S.C. § 3161(h).

To prove a statutory Speedy Trial Act violation, a criminal defendant must show that either: (1) more than 70 unexcludable days have elapsed since the indictment, or (2) the indictment was filed more than thirty days after his arrest. Because Defendant Roper cannot show a violation of either (as demonstrated below), the motion must be denied.

## BACKGROUND

On September 29, 2022, Defendant Roper was arrested for violating his supervised release (**Docs. 78–80**).[3] He made his initial appearance on October 4, 2022, and then his detention hearing was held on October 12, 2022 (**Docs. 85 & 88–92**).

Several months later, in May 2023, the Court held an evidentiary hearing (**Docs. 115 & 116**). The Court found by a preponderance of the evidence that Defendant violated a condition of supervised release—namely, to refrain from the unlawful use of a controlled substance (**Doc. 116 at 1**). Sentencing was continued until June 8, 2023. ***Ibid.*** Defendant was sentenced to thirteen months imprisonment (**Doc. 123**).

In September 2023, upon release from the Bureau of Prisons custody, Defendant Roper was "almost immediately," **Doc. 57 at 4**,[4] facing state charges for robbery. *See* **Doc. 57-2; Doc. 57-3; Doc. 57-6 at 6**. On November 1, 2023, the United States indicted Defendant for three violations of the Hobbs Act. *See* **Doc. 2**. A few days later, the state dismissed its case, **Doc. 57-5 at 2**, and Defendant Roper was arrested and made his initial appearance in federal court on November 8, 2023 (**Docs. 3 & 5**). *See also* **Doc. 78 at 1**.

---

[3] The first two paragraphs of this Section cite to the docket from case number 09-cr-1866.
[4] The documents referenced in the remainder of this Memorandum Opinion and Order are all from the instant case (unless otherwise noted).

Defense counsel now seeks dismissal with prejudice because Defendant Roper was arrested for supervised release violations that share the same operative facts with the instant Indictment (**Doc. 57 at 6**). According to counsel, this "is an issue of first impression in the Tenth Circuit." ***Id.***

As explained below, the Court concludes: (1) the Tenth Circuit has addressed this issue, (2) Defendant's Speedy Trial Act rights were not violated, and (3) Defendant is entitled to no relief.

## DISCUSSION

### I. The Speedy Trial Act Was Not Violated

Defendant Roper contends the Speedy Trial Act timelines were triggered when he was arrested for his supervised release violations (**Doc. 57 at 8–11**). According to the United States, this is a misreading of the Act and relevant case law. As such, the Court analyzes both (before ultimately deciding the United States' position is correct).

Let's start with the text:

> Any information or indictment charging an individual with the commission of ***an offense*** shall be filed within thirty days from the date on which such individual was arrested or served with a summons ***in connection with such charges***. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

18 U.S.C. § 3161(b) (emphasis added). This language makes clear that the 30-day clock is not triggered for any arrest. Instead, the Act's language explains the clock starts only for an arrest that is "in connection with such charges." Which charges? Well, the use of "such" directs back to the specific charges—those federal charges listed in the information or indictment. The supervised

release revocation statute, *see* 18 U.S.C. § 3583, is not a new charge,[5] crime,[6] or offense.[7] It is, however, "a separate part of the original sentence." *United States v. Salazar*, 987 F.3d 1248, 1254 (10th Cir. 2021). The text does not support Defendant's claim.

> The text of the supervised release statute reinforces this point:
>
> The court may . . . revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute ***for the offense that resulted in such term of supervised release*** without credit for time previously served on post-release supervision, if the court . . . finds by a preponderance of the evidence that the defendant ***violated a condition of supervised release*** . . . .

18 U.S.C. § 3583(e)(3) (emphasis added). Supervised release violations involve the previous crime of conviction. And revocation is based upon "violat[ing] a condition," not "an offense" or "charges." *Compare id.*, *with* § 3161(b).

The United States Supreme Court has issued on-point decisions as well—holding that "revocation of parole is not part of a criminal prosecution[,] and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). The high court has also explained the United States may prosecute supervised release violations "in their own right," and also as "postrevocation sanctions as part of the penalty for the initial offense." *Johnson v. United States*, 529 U.S. 694, 700 (2000). This means that Defendant's arrest for violating his supervised release does not implicate the Speedy Trial Act.

---

[5] A "charge" is a "formal accusation of an offense as a preliminary step to prosecution." *Charge*, BLACK'S LAW DICTIONARY (11th ed. 2019).
[6] A "crime" is a "positive or negative act in violation of penal law." *Crime*, BLACK'S LAW DICTIONARY (6th ed. 1991).
[7] An "offense" is a "violation of the law." *Offense*, BLACK'S LAW DICTIONARY (10th ed. 2014).

This Court also surveyed numerous courts of appeals cases. In so doing, the Court concludes Defendant's argument[8] is not, in fact, one of "first impression." The Tenth Circuit—as well as almost every other court of appeals—has: (1) ruled on this issue, and (2) found defense counsel's argument to be without merit.

On at least two occasions, the Tenth Circuit has explained the Speedy Trial Act only applies to Defendants arrested "for a new offense." *United States v. Gomez-Diaz*, 415 F. App'x 890, 894 (10th Cir. 2011) (unpublished) (citing *United States v. Bagster*, 915 F.2d 607, 609–11 & n.3 (10th Cir. 1990)). And, despite defense counsel's argument to the contrary, it is well-established that "a defendant in a supervised release hearing is not entitled to the same protections owed a defendant in a criminal proceeding." *United States v. Mullane*, 480 F. App'x 908, 910 (10th Cir. 2012) (unpublished); *see also United States v. Collins*, 859 F.3d 1207, 1216–17 (10th Cir. 2017) (Holmes, J.) ("Most of the fundamental constitutional procedural protections that are normally applicable to a criminal prosecution are not required for supervised-release proceedings as a matter of constitutional law." (cleaned up)); *United States v. Fay*, 547 F.3d 1231, 1234 (10th Cir. 2008) ("Revocation hearings are not part of a criminal prosecution."); *United States v. Cordova*, 461 F.3d 1184, 1187 (10th Cir. 2006) (explaining a "criminal prosecution" is different from a "supervised release" hearing).

The other courts of appeals to decide this issue unanimously agree—the Speedy Trial Act is inapplicable to supervised release revocation proceedings (as they are not stages in a criminal proceeding). *See, e.g., Acha v. United States*, 910 F.2d 28, 30–31 (1st Cir. 1990) (per curiam);

---

[8] On one hand, Defendant acknowledges that "offense" refers to "any Federal criminal offense." **Doc. 57 at 6**. The motion then explains the purpose of the Speedy Trial Act is to "protect a defendant's constitutional right to a speedy indictment and trial, and to serve the public interest in bringing prompt criminal proceedings." **Ibid.** (citations omitted). Given that supervised release revocation hearings are not criminal proceedings, the analysis ends.

On the next page of the motion, however, Defendant argues that a violation of supervised release is "an 'offense' under the Speedy Trial Act." **Id. at 7**. It is not. The argument that the supervised release petition "alleg[ing] Mr. Roper committed the robberies . . . satisfies the requirement of a formal charge," **id. at 10**, is incorrect.

*United States v. Patterson*, 135 F. App'x 469, 473–74 (2d Cir. 2005) (unpublished) ("While the indictment charges arose from some of the same facts as some of the supervised release violations, they constitute separate offenses from the charge of violating supervised release conditions."); *United States v. Soles*, 336 F. App'x 287, 290 (4th Cir. 2009) (per curiam) (unpublished) ("As supervised release revocation proceedings are not stages in the criminal prosecution, the Speedy Trial Act has no applicability to them."); *United States v. Gardner*, 248 F. App'x 605, 607 (5th Cir. 2007) (per curiam) (unpublished) (explaining the "purpose of the arrest" informs § 3161(b) analysis); *United States v. Hinojosa*, 67 F.4th 334, 338–40 (6th Cir. 2023) (explaining § 3161's "30-day clock did not apply" because Defendant was arrested for "alleged violations of the terms of his supervised release, not on federal charges"); *United States v. Contreras*, 63 F.3d 852, 855 (9th Cir. 1995); *United States v. Keel*, 254 F. App'x 759, 761 (11th Cir. 2007) (per curiam) (unpublished) ("A violation of supervised release, if it is a criminal act, may be prosecuted separately for (1) the supervised release violation, and (2) the substantive criminal act.").

Defendant also argues that "398 days" have passed from the "time of his arrest on the supervised release warrant to the filing of the instant indictment." **Doc. 57 at 15**. So what?[9] From approximately September 29, 2022, to September 1, 2023, Defendant was incarcerated for violating his supervised release in a previous case. *See* **Docs. 78–80 & 123** (case number 09-cr-1866). Shortly after release from the BOP, Defendant was arrested on state charges—and held in state pretrial detention (**Doc. 57-5 at 2**).

In order for defense counsel to prevail, the Court would have to conclude that: (1) a violation of supervised release is an "offense" under the Speedy Trial Act, (2) a custodial sentence

---

[9] Facts matter. If Defendant was arguing that 398 days passed from the time of his arrest on a federal criminal complaint without an indictment, then this case would have a different result. To quote Justice Jackson, "Other cases presenting different allegations and different records may lead to different conclusions." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 507 (2023) (Jackson, J., concurring).

6

for supervised release revocation counts as unexcludable time under the Act, and (3) that time in state custody also counts under the Act. The Speedy Trial Act as well as extensive case law precedent simply does not support Defendant's arguments.

Take the following example:

*Example: Defendant Doe was released from BOP custody on March 15, 2018, after serving 12 years for bank robbery. His term of supervised release is 5 years (and the District of New Mexico is in charge of his supervision). Initially, Defendant Doe complies with all his mandatory and special conditions. But then, in June of 2020, he absconds. Probation petitions the Court based on the noncompliance, and an arrest warrant is issued the next day. Defendant Doe is not arrested until nearly a year later—in May of 2021. Defendant Doe admits to the violation and is sentenced to 7 months in custody for absconding (in violation of his conditions). A 3-year long term of supervised release is imposed upon release. Defendant Doe is released in December 2021. A few months later, in September 2022, Probation once again petitions the Court based on noncompliance—this time, however, the bases are: (1) use of a controlled substance, and (2) new law violations for armed robbery. After holding a revocation hearing, the Court finds that the United States only proved the controlled substance use violation (and not the new law violation). Defendant Doe is then sentenced to twelve months in custody—and another 3-year long term of supervised release is imposed. Once Defendant Doe is released from the BOP in September 2023, the State of New Mexico indicts him for the new law violation. He is then held in pretrial state custody—until a few weeks later, when the United States Attorney's Office indicts Defendant Doe on federal charges. Has the United States violated the Speedy Trial Act because the Indictment is more than 30-days after his September 2022 arrest for a supervised release violation?*

Although defense counsel would answer "yes," **Doc. 57 at 8–11**, the law says otherwise. The thirteen-month sentence for Defendant's supervised release revocation was improperly included as speedy trial time in defense counsel's motion (when mentioning the "398 days"). Supervised release revocation proceedings are ***not*** a criminal proceeding—thus, the Speedy Trial Act does not apply. Additionally, regarding his time in state custody, Defendant fares no better—as the Act only relates to federal custody; not state custody. *See Bagster*, 915 F.2d at 609; *see also United States v. Occhipinti*, 998 F.2d 791, 796 n.4 (10th Cir. 1993). What Defendant fails to understand is that his arrest, and subsequent incarceration, for the supervised release violation is separate and distinct from the indictment which initiated this case. Even when the charges in the indictment stem from the same facts which led to an arrest for supervised release violations, the offenses are considered separate. Section 3161 has no application here. There is no speedy trial violation.

## II. "The Ruse Exception" Does Not Apply

Defendant also claims to find refuge in the "ruse exception." **Doc. 57 at 11–14**. Although defense counsel is correct in stating the Tenth Circuit has adopted the "ruse exception," ***id.* at 11**, the case cited deals with civil detention. *See United States v. Pasillas-Castanon*, 525 F.3d 994, 997–98 (10th Cir. 2008). Defendant Roper's comparison is misplaced. *See* **Doc. 78 at 10–11**.

The one other Tenth Circuit case cited by defense counsel simply discussed (without deciding) that the ruse exception could apply to state custody. *See United States v. Asfour*, 717 F. App'x 822, 826 (10th Cir. 2017) (unpublished) ("[D]efendants would need to meet this heavy burden of demonstrating that the primary or exclusive purpose of the state detention was to hold the defendant for future federal prosecution." (cleaned up)). The language from that decision that

jumps out to this Court, however, is that the ruse exception "is not easily triggered." *Asfour*, 717 F. App'x at 826 (quoting *Passilas-Castanon*, 525 F.3d at 998).

In an attempt to satisfy his heavy burden, Defendant claims the United States "improperly delayed the formal federal prosecution of Mr. Roper by arresting and prosecuting him on September 29, 2022, for supervised release violations because more time was needed to complete the robbery investigation." **Doc. 57 at 13**. But that is not what happened here. The formal federal prosecution was not "improperly delayed." Nor was he prosecuted for the supervised release violations to buy more time to "complete the robbery investigation." The Petition was filed because—and only because—there were allegations that he violated the terms of his supervised release (**Doc. 78 at 2**). In fact, during the evidentiary hearing, the Court did not find a supervised release violation occurred based upon the robberies. **Doc. 127 at 123–26** (case number 09-cr-1866). The Judgment makes this abundantly clear. **Doc. 123** (case number 09-cr-1866). Rather, the violation of his conditions (*viz.*, his unlawful use of a controlled substance while on supervised release) is what resulted in both the Petition and the thirteen-month sentence. ***Ibid.***[10]

Defense counsel seems to suggest that a petition for revocation of supervised release cannot be based upon both a: (1) violation of a mandatory term of supervised release, and (2) new law violation. Essentially, as posited by defense counsel, the fact there was an "ongoing investigation" into new law violations is indisputable proof of a ruse. Thus, any supervised release revocation for a new law violation is always automatically tainted.

This is an incorrect interpretation of the law. Consider the following hypothetical:

---

[10] On the record, the Court addressed the § 3553(a) factors. Specifically, the Court noted that Roper's history and characteristics, criminal history, and poor performance on supervised release meant a sentence that was sufficient but not greater than necessary was a term of incarceration for thirteen months (**Doc. 122**). Additionally, the imposition of a thirteen-month sentence for the supervised release violation was requested by the United States and Probation. ***Ibid.***

*Example: Defendant Smith was released from BOP custody on January 1, 2022, after serving approximately 7 years for federal drug trafficking crimes in the District of New Mexico. His term of supervised release is 3 years. In May, June, and July of 2023, Defendant Smith possessed cocaine. During those same months, Defendant Smith tested positive on several urinalyses for cocaine. In October 2023, during Halloween, Defendant Smith is pulled over for a DWI—and the New Mexico State Police officer sees several guns and bags of narcotics in the backseat. Defendant Smith is arrested. The contraband is seized by NMSP—and an investigation is opened. On November 1, 2023, Probation petitions the Court based on the noncompliance (for allegedly violating special and mandatory conditions). An arrest warrant is issued the next day.*

According to defense counsel, the supervised release violations for using and possessing controlled substances in May–July are a ruse to provide the United States more time to investigate potential federal charges for the Halloween incident. Moreover, because NMSP is investigating the drug and gun charges, any later attempt by the U.S. Attorney's Office to prosecute the Halloween crimes would also be a ruse. According to defense counsel, a Defendant's failure to comply with supervised release functions as a shield against later prosecution for new law violations.

This is a misapplication of the law. The Tenth Circuit has never held that the ruse exception is as broad sweeping as Defendant contends. And because Defendant Roper was not subjected to civil detention, he cannot properly avail himself of the ruse exception contemplated in *Pasillas-Castanon*. And finally, because Defendant Roper has not provided "actual evidence of collusion" between the state and federal governments, he failed to prove a sham under *Asfour*. As the United States phrased it, "Defendant asks this Court to expand the reach of [the Speedy Trial Act] to a degree light years away from the repeated position of the Circuit Courts as well as the Supreme

Court." **Doc. 78 at 9**. This Court is bound to faithfully follow and apply controlling Supreme Court and Tenth Circuit precedent. Here, an abundance of on-point case law directly undermines Defendant's argument that: (1) a supervised release violation triggers the Speedy Trial Act, and (2) the ruse exception. Accordingly, the Court must deny the motion.

### CONCLUSION

Because Defendant Roper was indicted on November 1, 2023, and arrested on November 8, 2023, he is unable to show a statutory Speedy Trial Act violation. His novel argument that a violation of supervised release is an "offense" under the Speedy Trial Act is not supported by a plain reading of the text (nor any case law). Finally, this Court is bound by precedent—and cannot expand the scope of the "ruse exception" beyond what the Tenth Circuit has provided.

Defendant's Motion to Dismiss (**Doc. 57**) is **DENIED**.

**IT IS SO ORDERED**.

/s/ _____
**WILLIAM P. JOHNSON**
**CHIEF UNITED STATES DISTRICT JUDGE**

11