IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

      Plaintiff,

vs.                                                                                                             No. 1:23-cr-1617-WJ

**JASON ROPER**,

      Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS

**THIS MATTER** is before the Court on Defendant Jason Roper's Motion to Suppress Lost or Destroyed Evidence (**Doc. 63**) and the United States' Response (**Doc. 83**). The Court held an evidentiary hearing on August 6, 2024. Having reviewed the pleadings of the parties, heard the evidence[1] and arguments of counsel, and considered the applicable law, the Court concludes the motion to suppress is not well-taken and is, therefore, **DENIED**.

### BACKGROUND

Defendant Jason Roper is charged with three counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951 (**Doc. 2**). Defendant is alleged to have robbed three "Ross Dress For Less" stores. *Ibid.* The first robbery occurred on August 14, the second on August 15, and the third on September 8, 2022. *Ibid.* During the first robbery, it is alleged that Defendant "approached the cash register with a box of tweezers." **Doc. 63 at 1–2**. But instead of paying for the tweezers, he pulled out a

---

[1] During the hearing, the United States presented witness testimony from Crime Scene Specialist ("CSS") Laura Laskar and former Albuquerque Police Department ("APD") latent print examiner Lydia Lujan. *See* **Doc. 84**. Within this Memorandum Opinion and Order, the Court will cite to the court reporter's unofficial transcript from the hearing that has not been filed on the docket. Obviously, then, the citations are subject to change on the official version of the transcript—however, it is important that some quotations from the hearing are captured verbatim.

handgun, demanded money from the cash registers, and left the tweezer box on the counter. *Id.* at 2. The APD Crime Scene Specialist ("CSS") lifted a "latent fingerprint" from this tweezer box. *Ibid.* Eventually, the APD latent print examiner compared the latent print to Defendant's fingerprint—and identified him as the source of the print. *Ibid.*

The tweezer box was not collected by APD. Defendant now moves to suppress any evidence relating to: (1) a tweezer box, or (2) the fingerprint obtained from the tweezer box (**Doc. 63 at 1**). In support, he argues that the failure to collect the evidence violated his Due Process rights. For the reasons that follow, the Court concludes otherwise.

## LEGAL STANDARD

The Due Process Clause of the Fifth Amendment obligates the United States to disclose favorable evidence to criminal defendants. *See generally Brady v. Maryland*, 373 U.S. 83 (1963). The Due Process Clause also obligates the United States to preserve "evidence that might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488 (1984); *Arizona v. Youngblood*, 488 U.S. 51 (1988). The Due Process Clause focuses on whether the evidence is so material that a criminal defendant could not receive a fair trial without it. *United States v. Agurs*, 427 U.S. 97, 108–10 (1976).

To prevail on a claim of lost or destroyed evidence, Defendant must demonstrate[2] that either "its exculpatory value was apparent for purposes of *Trombetta* or that it was destroyed in bad faith in satisfaction of the *Youngblood* standard." *Johnson v. City of Cheyenne*, 99 F.4th 1206,

---

[2] On this point, Defendant "bears the burden of proving a *Trombetta-Youngblood* violation." *Fernandez*, 20 F.4th at 1314. Because Defendant has not provided any facts sufficient to carry his burden—and instead relies on a "would've, could've, should've" argument—the Court rules against him.
First, Defendant's argument that the tweezer box was apparently exculpatory finds no support in the law—and is devoid of any facts to prove this point. Phrased differently, Defendant did not establish that: (1) the tweezer box had apparent exculpatory value, or (2) that law enforcement was aware of its exculpatory value. Second, Defendant's argument that the tweezer box was potentially useful is just that—an argument. He did not present any evidence that law enforcement destroyed the evidence or otherwise acted in bad faith.

1226 (10th Cir. 2024) (Holmes, C.J.); *see also United States v. Fernandez*, 24 F.4th 1321, 1332 (10th Cir. 2022).

It is worth noting, however, that the Due Process Clause is not violated if law enforcement simply fails to collect evidence. *See United States v. Bullcoming*, 22 F.4th 883, 889–90 (10th Cir. 2022) (noting that neither Rule 16 nor the United States Constitution require the Government to secure evidence it does not possess); *see also United States v. Tierney*, 947 F.2d 854, 864 (8th Cir. 1991) ("It is well settled that there is no affirmative duty upon the government to take action to discover information which it does not possess." (cleaned up)).

## DISCUSSION

Defendant's motion focuses on the *Trombetta* and *Youngblood* categories of "constitutionally guaranteed access to evidence." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). *See* **Doc. 63 at 3–10**. He asserts that the United States' failure to collect the tweezer box violates his due process rights (**Doc. 63 at 6–7**).

To prevail under *Trombetta*, Defendant must establish that the United States failed to preserve "material" evidence—meaning evidence that might be expected to play a role in the defense, after it is gathered and in possession of the police when: "(1) it destroys evidence whose exculpatory significance is 'apparent before' destruction; and (2) the defendant remains unable to 'obtain comparable evidence by other reasonably available means.'" *United States v. Bohl*, 25 F.3d 904, 910 (10th Cir. 1994) (quoting *Trombetta*, 467 U.S. at 489). Alternatively, to prevail under *Youngblood*, Defendant must show that law enforcement acted in bad faith when destroying "potentially useful" evidence. *United States v. Moya*, 5 F.4th 1168, 1194 (10th Cir. 2021) (citing *Youngblood*, 488 U.S. at 58).

Here, Defendant can show neither.

3

### I. Defendant Failed to Establish a *Trombetta* Violation

Defense counsel claims that because "the tweezer box and any evidence it contained is lost and irreplaceable and that the presence and potentially exculpatory value of DNA evidence was apparent before the box [was] left behind by CSS Laskar, *Trombetta* applies." **Doc. 63 at 7**. The record does not support this contention.

The two witnesses called by the United States testified that, based on their training and experience, the box itself had no evidentiary value—let alone apparently exculpatory value. They also testified that the tweezer box was not collected in accordance with APD policy. According to CSS Laskar, once the fingerprints were collected, "there was really nothing else that could be done with that tweezer box." **Unofficial Tr. at 6/22–7/2**. In fact, CSS Laskar testified that items subjected to fingerprint field testing are left behind (per APD's standard operating procedure). **Unofficial Tr. at 7/3–7/13**.

Again, failing to preserve evidence only violates a Defendant's due process rights if the evidence was exculpatory ***and*** its exculpatory value was apparent before its loss. *Trombetta*, 467 U.S. at 488–89. And Tenth Circuit precedent tells us that when further testing is required, then it follows that the item itself does ***not*** have apparent exculpatory value. *Bohl*, 25 F.3d at 910 (citing *Youngblood*, 488 U.S. at 58 (emphasis added)); *Moya*, 5 F.4th at 1193–94.

According to defense counsel, the tweezer box was apparently exculpatory because "law enforcement knew the box was handled by the robber with his bare hands and dusted the box for fingerprints." **Doc. 63 at 7**. But fingerprint testing and DNA testing are (obviously) tests. Perhaps more tests could have been conducted by a defense expert if more evidence was collected. But even so, there was nothing facially exculpatory about the tweezer box. All this to say, evidence is not "apparently exculpatory" simply because more testing—whether it be DNA, fingerprinting, or

4

otherwise—could have been undertaken. *See, e.g., United States v. Gutierrez*, 415 F. App'x 870, 873–75 (10th Cir. 2011) (unpublished) (concluding that the neither "black box" from the vehicle nor the pistol were "exculpatory" under *Trombetta* because both needed "further testing"); *United States v. Ward*, 182 F. App'x 779, 785 (10th Cir. 2006) (unpublished) ("[T]he most [Defendant] has shown is that if the items were available, further testing may have produced exculpatory evidence. This is insufficient to warrant application of *Trombetta*."); *see also United States v. Brown*, 1997 U.S. App. LEXIS 30354, at *10 (4th Cir. Nov. 5, 1997) (unpublished) (explaining evidence that could have been subjected to potential future fingerprint testing is not apparently exculpatory); *United States v. Mellies*, 329 F. App'x 592, 597–98 (6th Cir. 2009) (unpublished) ("[I]t is wholly conjectural that such fingerprints would be exculpatory."); *United States v. Johnson*, 469 F. App'x 632, 639–40 (9th Cir. 2012) (unpublished) (finding Defendant did not establish "potential fingerprint evidence" was "apparently exculpatory").

To quote defense counsel, the DNA evidence was "potentially exculpatory." **Doc. 63 at 7**. That is because, according to defense, the "DNA evidence collected from the tweezer box ***would*** show that Mr. Roper did not touch the tweezer box." *Id.* **at 8** (emphasis added). But this logic proves the tweezer box was not "apparently" exculpatory. *Harry*, 816 F.3d at 1276.

"At most, this argument establishes that if the [tweezer box]³ was available, further testing may have produced exculpatory evidence. This is insufficient to warrant application of *Trombetta*." *Gutierrez*, 415 F. App'x at 874 (modified).

## II. Defendant Failed to Establish Bad Faith Under *Youngblood*

When, as here, the evidence "was not apparently exculpatory but merely 'potentially useful,' the failure to preserve the evidence does not violate due process 'unless [the] criminal

---

³ Rather than reinvent the wheel, this Court modified, slightly, this on-point quotation from *Gutierrez*. Where the words "tweezer box" appear above, the actual Order and Judgment discussed a "videotape."

5

defendant can show bad faith on the part of the police.'" *United States v. Harry*, 816 F.3d 1268, 1276 (10th Cir. 2016) (quoting *Youngblood*, 488 U.S. at 58 (brackets in original)). The bad faith inquiry focuses on law enforcement's "knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Bohl*, 25 F3d at 911. Negligence is not enough. *Id.* at 912; *see also Parker*, 72 F.3d at 1452; *Youngblood*, 488 U.S. at 58.

*Youngblood* teaches that the loss of potentially useful information can be a due process violation if the defendant can show law enforcement acted in bad faith. The Tenth Circuit has approved of the following multifactored analysis for determining bad faith: (1) whether the government had explicit notice that Defendant believed the tweezer box was exculpatory, (2) whether the claim that the evidence is potentially exculpatory is conclusory, or instead "backed up with objective, independent evidence," (3) whether the government could control the disposition of the evidence once Defendant indicated that it might be exculpatory, (4) whether the evidence was central to the case, and (5) whether the government offers any innocent explanation for its disposal of the evidence. *United States v. Smith*, 534 F.3d 1211, 1224–25 (10th Cir. 2008) (first quoting *United States v. Beckstead*, 500 F.3d 1154, 1160–61 (10th Cir. 2007); then citing *Bohl*, 25 F.3d at 911–13). On balance, these factors show that Roper's motion should be denied.

As far as the Court can tell, this July 2024 motion is the first assertion by defense counsel that the tweezer box was exculpatory—so factor one favors the United States.

Likewise, the motion is entirely[4] conclusory—meaning factor two also favors the United States. According to defense counsel, CSS Laskar knew the importance of the DNA evidence,

---

[4] The suppression motion makes no meaningful argument of bad faith (**Doc. 63 at 9**). In the half a page dedicated to a *Youngblood* analysis, Defendant posits: (1) an APD crime scene specialist "presumably underst[ood] the implication of DNA evidence . . . [and] was on notice of the tweezer box's importance, (2) law enforcement had the ability to secure the tweezer box but didn't, and (3) that the tweezer box could have fit into an evidence envelope. ***Ibid.***

"and the limitations of latent print analysis, [and] was on notice of the tweezer box's importance through her experience and training." **Doc. 63 at 9**. But at the hearing, CSS Laskar testified that a "good source of DNA" did not exist (because there was no "blood, saliva, [or] spit" on the box). **Unofficial Tr. at 13/1–13/5**. Additionally, Examiner Lujan testified that once "a fingerprint has been identified, then there is no other testing—no further testing needed." **Unofficial Tr. at 45/9–45/16**. Upon questioning from defense counsel about if DNA testing for identification is more "reliable" than fingerprint testing, Lujan stated she "disagree[d]" with that assertion. **Unofficial Tr. at 51/2–51/11**. To support her point, Lujan testified that fingerprinting is more reliable because identical twins have the same DNA but different fingerprints. **Unofficial Tr. at 51/10–52/1**.[5] This Court does not—and need not—decide if DNA testing is more reliable than fingerprinting analysis nor does the Court discount the importance of DNA evidence in court cases. Instead, this discussion simply demonstrates the conclusory nature of Defendant's claim.

Moving on to factor three. There is no doubt that the tweezer box was not collected. That necessarily means that no governmental actor "control[led] the disposition of the evidence" once Defendant indicated it may be exculpatory. *Smith*, 534 F.3d at 1224. Although law enforcement initially controlled the disposition of evidence, that was back in 2022. This factor favors the United States.

---

Typically, such conclusory arguments are insufficient to create an obligation on the part of this Court to consider them substantively. *See United States v. Ellis*, 868 F.3d 1155, 1181 (10th Cir. 2017). Here, however, the Court addresses (and then rejects) this argument within the contours of the bad faith balancing test.

[5] Back in 1995, U.S. District Judge Santiago Campos authored an opinion explaining this point. *See United States v. Peters*, No. 91-CR-395, 1995 U.S. Dist. LEXIS 20950, at *14 n.8 (D.N.M. Sept. 7, 1995). As Judge Campos explained it, "In this way DNA differs from fingerprints. The fingerprints of identical twins are not identical because fingerprints are not controlled by genetics but rather by conditions in utero during a certain stage in the development of the fetus." A few years later, Fourth Circuit Judge J. Michael Luttig also noted that DNA testing is inaccurate with respect to "identical twins." *Harvey v. Horan*, 285 F.3d 298, 304 n.1 (4th Cir. 2002) (Luttig, J., respecting denial of rehearing *en banc*).

With respect to factor four, the tweezer box itself is not central to the case.

And finally, the United States offers an innocent explanation for the lost (or destroyed) evidence—reliance on APD procedures and training.

During the hearing, both CSS Laskar and Examiner Lujan testified that APD protocols—regarding *not* collecting tangible items—were followed.[6] The tweezer box was not collected because the evidence (*i.e.*, the fingerprints) were collected. There was no suggestion, even on cross-examination, that anything untoward was afoot. And that's fatal to Defendant's challenge.

In attempting to demonstrate bad faith, Defendant contends that law enforcement "inadvertently or negligently" lost the evidence. **Doc. 63 at 9**. But, even if true, negligence does not mean bad faith.[7]

Ultimately, Roper failed to offer any evidence in support of his allegation of "bad faith." Conversely, the United States made an affirmative and credible showing as to the absence of bad

---

[6] On this point, the Court highlights that CSS Laskar's testimony regarding fingerprint recovery from a window. *See* **Unofficial Tr. at 22/19–23/9**. When asked "if you're processing a fingerprint on a window, you don't cut the glass or remove the window, do you?" she responded with "No." ***Ibid.*** Equally compelling is Examiner Lujan's explanation that crime scene specialists "are just not able to collect everything from the field." **Unofficial Tr. at 44/18–44/19**. As an example, she noted that if a fingerprint was collected from a door, then the door itself would not be collected.
   Thus, despite defense counsel's proffer that the tweezer box "would have easily fit in an evidence envelope," **Doc. 63 at 9**, that is not APD's procedure. The rule is based on all evidence. Just because the tweezer box is smaller than a door or window does not mean that APD needed to collect it.

[7] Neither carelessness nor negligence are sufficient to establish bad faith. *See City of Cheyenne*, 99 F.4th at 1231;  *Harry*, 816 F.3d at 1279; *Bohl*, 25 F.3d at 912; *United States v. Richard*, 969 F.2d 849, 853–54 (10th Cir. 1992); *see also United States v. Buntyn*, No. 20-cr-708, 2021 U.S. Dist. LEXIS 187571, at *10 (D.N.M. Sept. 29, 2021) (Riggs, J.), aff'd 104 F.4th 805 (10th Cir. 2024); *see also United States v. Taylor*, 312 F. Supp. 3d 170, 179 (D.D.C. 2018) ("*Youngblood* requires more than mere negligence or oversight to establish the bad faith necessary for a due process violation.").
   Moreover, at least two courts of appeals have concluded that even "reckless" destruction of evidence does not rise to "bad faith" under *Youngblood*. *See, e.g., United States v. Tyerman*, 701 F.3d 552, 560 (8th Cir. 2012); *Fappiano v. City of New York*, 640 F. App'x 115, 120 (2d Cir. 2016) (unpublished); *cf. United States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001) (explaining that even gross negligence does not amount to bad faith).

faith. Per the witness testimony, the tweezer box had no evidentiary value outside of the fingerprint collection. And without a showing of bad faith, suppression under *Youngblood* is not warranted.

**III. The Tweezer Box and the Fingerprint Card**

Here, the crucial piece of evidence is the latent print removed from the tweezer box. **Unofficial Tr. at 61/17–61/23** ("The evidence . . . is the latent lift card."). The fingerprint card was then used by Examiner Lujan (and then reviewed by another examiner) to identify Roper. **Unofficial Tr. at 45/24–46/21 & 61/17–61/23**.

Witness testimony at the Suppression hearing established that the robber touched or handled a tweezer box. CSS Laskar then lifted the fingerprint. Ultimately, the lifted print was used to identify Defendant as the robber. There is no doubt that an adequate chain of custody exists—meaning the evidence is admissible.

In reaching this conclusion, the Court finds the Sixth Circuit's *Rodriguez* case instructive. There, much like here, the criminal defendant complained "that the government failed to produce the original source of the fingerprints." *United States v. Rodriguez*, 409 F. App'x 866, 870 (6th Cir. 2011) (unpublished). In that case, the source of the fingerprints was a CD. *Ibid.* The *Rodriguez* Court resolved the issue by explaining "where direct testimony establishes that the defendant handled the item from which fingerprints were obtained, whether the government has proved an adequate chain of custody goes to . . . . the weight of the evidence and not admissibility." *Id.* at 870–71; *cf. Williams v. Fla. Dep't of Corr.*, 2016 U.S. App. LEXIS 24444, at *12–14 (11th Cir. July 27, 2016) (unpublished) (explaining that "the material evidence was the fingerprint, not the cookie jar" from which the prints were taken). The same logic rings true here.

Finally, the Court notes that the fingerprint card at issue is still available for testing. **Unofficial Tr. at 74/3–74/16**. Thus, to the extent Roper wishes to hire an expert to compare his

9

known fingerprints to the fingerprint card recovered from the tweezer box—this would certainly be allowed. (Juries often hear such dueling expert testimony). In closing, the item of evidentiary value still exists—and is available for future testing—so suppression is inappropriate.

## CONCLUSION

In summary, the tweezer box was not apparently exculpatory. Instead, it was (at best) potentially useful. But wholly lacking here was any showing of bad faith. As such, there was no violation of Defendant's due process rights so the Court **DENIES** his Motion to Suppress (**Doc. 63**).

**IT IS SO ORDERED**.

/s/
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE