IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                          No. 1:23-cr-1617-WJ

JASON ROPER,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING *PRO SE* MOTION FOR NEW COUNSEL

**THIS MATTER** comes before the Court on Mr. Roper's *pro se* Motion to Appoint New Counsel (**Doc. 90**). Because of this request, the Court held a hearing on August 29, 2024, to determine representation and decide if new counsel was necessary. After considering the briefing, oral arguments of counsel, and applicable law, the Court **DENIES** the request.[1]

### BACKGROUND

Mr. Roper is charged with three counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951. *See* **Doc. 2 (Indictment)**. After his arrest, Mr. Roper was ordered into pretrial detention (**Docs. 12, 13, 20**). Mr. Roper's then-counsel filed a motion (**Doc. 16**) appealing the Magistrate Judge's Detention Order (**Doc. 13**). A hearing was set (**Docs. 17, 19, 21, 22, 26, 27**) and ultimately conducted on January 30, 2024 (**Docs. 30 & 32**). On February 1, 2024, the Court affirmed the Magistrate Judge's Detention Order and denied Mr. Roper's appeal (**Doc. 33**).

A few days later, Mr. Roper filed a "Motion to Appoint New Counsel" (**Doc. 35**). Counsel

---

[1] On the record, at the conclusion of the hearing, the Court orally denied Mr. Roper's Motion. *See* **Hrg. Tr. at 196** ("[T]he motion for new counsel is denied."). During the hearing, defense counsel orally moved to withdraw. **Hrg. Tr. at 88–90**. This Memorandum Opinion and Order ("MOO") merely supplements the Court's oral ruling—and resolves both motions (by way of denial).

1

then filed his own Motion to Withdraw (**Doc. 36**). On February 20, 2024, the Court held a hearing on these motions (**Doc. 37, 39, 40, 41**), and granted the request (**Docs. 42 & 43**). Of note, however, the Court informed Mr. Roper that it would only replace appointed counsel once (**Doc. 45**). And, as the Court usually does when granting such motions, the Court informed Mr. Roper that he needed to make the relationship with new defense counsel work; and that an attorney's job is to tell him what he needs to hear (*not what he wants to hear*). ***Ibid.***

Current defense counsel has represented Mr. Roper for over six months. Since her appointment, she has filed a Motion to Dismiss on Speedy Trial grounds (**Doc. 57**) and a Motion to Suppress (**Doc. 63**). Both motions were denied, however (**Docs. 80 & 86**).

What happened once these motions were denied? As expected, Mr. Roper filed another Motion to Appoint New Counsel (**Doc. 90**). So, here we go again. Each time Mr. Roper receives "bad news," he requests a new lawyer.

## THE HEARING[2]

The hearing began with Ms. Anderson moving to withdraw—followed shortly thereafter with the Assistant U.S. Attorney ("AUSA") commenting on the exquisite representation by defense counsel (**Doc. 93**). The AUSA then left the courtroom, and the hearing went into an *ex parte* session. *See* **Doc. 94**.

Mr. Roper told the Court that he has been displeased with "every lawyer that I have had."

---

[2] The Court conducted the majority of this hearing *ex parte*. *See* **Doc. 94 (Sealed Ex Parte Minutes)**. This is common because "attorney-client matters are privileged." *See United States v. Tso*, No. 14-cr-923, 2014 U.S. Dist. LEXIS 203807, at *1 n.1 (D.N.M. Aug. 26, 2014).
 When the United States returned to the courtroom, the Court summarized the *ex parte* session and provided the bases for its decision. Therefore, in this MOO, the Court only cites to matters stated—verbatim or summarized—on the record when the proceeding was unsealed. *See* **Doc. 93 (Clerk's Minutes)**.
 When using quotations, the Court cites to court reporter's unofficial transcript as "Hrg. Tr." Unsurprisingly, that transcript has not been filed on the docket (because the hearing only took place a few days ago). Nevertheless, it is important that some quotations from the hearing are captured verbatim.

**Hrg. Tr. at 4**. Upon questioning from the Court, Mr. Roper voiced his concern that none of his lawyers (past or present) have taken heed of his advice or listened to his desired trial strategy. ***Id.* at 5–14, 30–34, 47–52**. The Court then explained to Mr. Roper that defense attorneys decide trial strategy—not the criminal defendants.[3] After this colloquy between the Court and Mr. Roper, defense counsel stated they were "happy to continue" representing Mr. Roper (if the Court denied the motions). **Hrg. Tr. at 92–98**.

When the AUSA reentered the courtroom, the hearing went back into a public session (**Doc. 93**). The United States confirmed the case will not be dismissed. ***Id.* at 2**. Accordingly, the Court then explained the only ways for this case to be resolved are: (1) by plea, or (2) at trial.[4]

A sufficient record was established—across both the public and *ex parte* sessions—to enable the Court to rule on the motions. *See infra* ¶ I.B.

## DISCUSSION

As stated at the hearing, the Court does **not** find good cause exists to substitute trial defense counsel. Mr. Roper may not like hearing the information his various lawyers have conveyed to

---

[3] The Court informed Mr. Roper that "there are certain decisions you are obviously . . . entitled to make." **Hrg. Tr. at 35–37**. At the same time, the Court made clear that various other decisions are reserved for the lawyers. Although the Court did not read Justice Ginsburg's decision from *McCoy v. Louisiana*, 584 U.S. 414 (2018), it echoed its substance. *See id.* at 422 (cleaned up):
> Some decisions are reserved for the client—notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal . . . . Just as a defendant may steadfastly refuse to plead guilty in the face of overwhelming evidence against her, or reject the assistance of legal counsel despite the defendant's own inexperience and lack of professional qualifications, so may she insist on maintaining her innocence at the guilt phase of a trial.

[4] This Court routinely advises criminal defendants, like Mr. Roper, of the ways in which their case can be resolved. *See United States v. Jimenez-Marquez*, No. 23-cr-32, 2024 U.S. Dist. LEXIS 67706, at *3 (D.N.M. Apr. 12, 2024) (listing the three options of: dismissal, pleading, or trial). Of course, this Court is not alone in advising criminal defendants of their options on the record. *See, e.g., United States v. Cano-Varela*, 497 F.3d 1122, 1133 (10th Cir. 2007) ("There is nothing inherently coercive about requiring a defendant 'to make *a* decision—either plead guilty or go to trial.'" (citation omitted)); *United States v. Mejía-Encarnación*, 887 F.3d 41, 46 (1st Cir. 2018) (providing "two options" to defendant—enter a guilty plea or go to trial); *United States v. O'Lear*, 90 F.4th 519, 531 (6th Cir. 2024) (same); *United States v. Paige*, 824 F. App'x 710, 711 (11th Cir. 2020) (per curiam) (unpublished) (listing the same options).

him—but that does not mean there is a complete breakdown in the attorney-client relationship. (If it did, every criminal defendant who received "bad news" from an attorney would be entitled to new counsel.) But we don't shoot the messenger every time a lawyer has to deliver bad news to a client. Instead, a district court looks to the *Romero*[5] factors to determine if there is "a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible." *United States v. Lott (Lott I)*, 310 F.3d 1231, 1249 (10th Cir. 2002).

To warrant a substitution of counsel, a criminal defendant must show good cause—such as a complete breakdown of communication or an irreconcilable conflict. *United States v. Porter*, 405 F.3d 1136, 1140 (10th Cir. 2005). Mr. Roper showed nothing of the sort. Instead, Mr. Roper has identified a few matters of strategic disagreement with his defense counsel—but these issues are ultimately matters left to the discretion of counsel. Moreover, as discussed below, Mr. Roper has substantially (if not completely) and unreasonably contributed to any communication problems by insisting that counsel raise what appear to be frivolous legal issues.

**I. Analysis Under the *Romero* Factors**

Neither a "divergence of opinion" or "lost confidence" is a sufficient reason for appointing new counsel. *See United States v. Turner*, 217 F. App'x 799, 802 (10th Cir. 2007) (unpublished); *United States v. Johnson*, 961 F.2d 1488, 1490 (10th Cir. 1992). And, certainly, counsel's gender (**Doc. 90 at 2**) cannot form the basis for needing a new lawyer.

As detailed above, Mr. Roper is being represented adequately, effectively, and zealously.[6] *See United States v. Rodriguez*, 2024 U.S. App. LEXIS 8365, at *6 (10th Cir. Apr. 8, 2024) (unpublished) (explaining "it was not improper for the court to opine on counsel's performance");

---

[5] *See Romero v. Furlong*, 215 F.3d 1107, 1113 (10th Cir. 2000).
[6] For what it's worth, the AUSA described defense counsels' performance as "excellent." **Doc. 93**.

4

*see also United States v. Byrum*, 567 F.3d 1255, 1266 (10th Cir. 2009); *United States v. Beers*, 189 F.3d 1297, 1302 (10th Cir. 1999). Many motions have been filed on Mr. Roper's behalf—and they have been forcefully argued. He is just unhappy with their outcome. But that does not require the Court to appoint him a fourth[7] attorney a few weeks before trial starts.

### A. Timeliness of the request

In the Court's view, the request is not timely.

The Court acknowledges that the Motion was filed nearly two months prior to the start of trial. *Compare United States v. Holloway*, 939 F.3d 1088, 1098 (10th Cir. 2019) (finding "six days" was untimely), *with United States v. Lott (Lott II)*, 433 F.3d 718, 725 (10th Cir. 2006) (finding a motion filed "three months" in advance of the hearing was timely). Mr. Roper's motion falls somewhere in the middle of what is considered "timely" versus "untimely." Nevertheless, the Court finds plenty of support to conclude his request is untimely.[8] That is because the docketing date of the Motion does not end the Court's analysis.

What further informs the determination that Mr. Roper's Motion is untimely is the conversation the Court had with Mr. Roper six months ago (**Doc. 45**). Back then, when granting the first Motion for New Counsel, the Court told Mr. Roper he would not get a third new lawyer (***ibid.***). In this Court's view, repeatedly firing counsel is a delay tactic—and such behavior is not rewarded. *See United States v. Vann*, 776 F.3d 746, 764 (10th Cir. 2015) (quoting the trial court

---

[7] In July, the Court approved the CJA appointment of co-counsel (**Docs. 67 & 68**). Thus, Mr. Roper's motion for new counsel would require the Court to appoint a fourth new lawyer to represent him.

[8] *United States v. Fox*, 558 F. App'x 66, 71 (2d Cir. 2014) (unpublished) (finding no abuse of discretion where district court denied motion for new counsel when trial was "five months away"); *United States v. Chambers*, 441 F.3d 438, 445 (6th Cir. 2006) (filing "one and a half months" prior to trial is untimely when the source of defendant's complaint is not new); *United States v. James*, 2023 U.S. App. LEXIS 3162, at *3 (9th Cir. Feb. 9, 2023) (filing three weeks before trial is untimely); *United States v. Mangual-Corchado*, 139 F.3d 34, 42 n.18 (1st Cir. 1998) (commenting, in dicta, that three weeks could be untimely); *United States v. Newell*, 584 F. Supp. 2d 201, 203 (D. Me. 2008) (finding a motion to withdraw filed approximately one month before trial was untimely).

5

when stating: "You have had two sets of lawyers. You have fired them both. Now, you want additional ones, and it's just delay." (cleaned up)).

As it stands, the trial date has already been continued four times (once by former counsel and three times by current counsel). Originally, trial was set for January 2024 (**Doc. 15**). Now, trial is set for October 15, 2024 (**Docs. 85 & 89**). What is clear is that this case has been heading towards trial for quite some time—and Mr. Roper's latest request to appoint new counsel is not well-taken.

The decision to grant or deny the Motion is not made in a vacuum—as "[c]ourts have to 'balance the need for efficient administration of the criminal justice system against the defendant's right to counsel.'" *Beers*, 189 F.3d at 1302 (quoting *United States v. Padilla*, 819 F.2d 952, 956 (10th Cir. 1987)). For these reasons, the Court finds that Mr. Roper's Motion is not timely—and is, instead, a delay tactic.

On this point, the Court notes that Mr. Roper's request mirrors the case of *United States v. Book*, 51 F. App'x 819, 820 (10th Cir. 2002) (unpublished). In *Book*, much like here, the trial court denied a motion to suppress. Right after, Book asked for a new lawyer. This Court—like that district court—finds Mr. Roper's "request for new counsel [is] simply a delay tactic." *Book*, 51 F. App'x at 820.

Again, it is well-established that a district court has "wide latitude" when "balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *United States v. Holloway*, 826 F.3d 1237, 1241–42 (10th Cir. 2016) (quoting *United States v. Gonzalez-Lopez*, 584 U.S. 140, 152 (2006)). Furthermore, if a request for substitute counsel would necessitate "a last-minute continuance," then the trial judge's actions are entitled to "extraordinary deference." *United States v. Powell*, 847 F.3d 760, 779 (6th Cir. 2017); *United States v. Gottesfeld*, 18 F.4th 1, 13 (1st Cir. 2021) (same); *see also United States v. Hughes*, 191 F.3d 1317, 1324 n.3

(10th Cir. 1999) (employing the phrase "broad discretion" instead of "extraordinary deference").

The first *Romero* factor weighs against appointing new counsel. But even if the request is considered timely, the remaining factors weigh against Mr. Roper.

### B. Adequate inquiry

The second *Romero* factor looks at whether the district court adequately inquired into the matter. Here, the Court held a hearing. And at that hearing, both defense counsel and Mr. Roper explained their positions. *See* **Docs. 93 & 94**. The United States provided input as well. Thus, the Court has created a sufficient record to reach an informed decision.

As stated on the record, the Court's inquiry demonstrated that Mr. Roper cannot establish good cause for substituting counsel. *See* **Hrg. Tr. at 108–89 & 191–97**. Thus, this factor weighs against him.

### C. Is there a "total lack of communication"?

Third, as mentioned at the hearing, the conflict is not "so great" that is has resulted in a total breakdown of communication. Instead, the Court concludes this is simply a strategic disagreement—not an outright stonewalling. *See Holloway*, 939 F.3d at 1099 ("Conflict that results in a total breakdown of communication exists where the defendant and counsel ***could not, in any manner, communicate***." (emphasis added)).

Rather, Mr. Roper thinks he is a better lawyer than his two lawyers. *See* **Doc. 90** (highlighting what he thinks his lawyers should have done). But a disagreement of this type does not preclude the mounting of an adequate defense. *Romero*, 215 F.3d at 1113; *see also United States v. Maxton*, 666 F. App'x 755, 758 (10th Cir. 2016) (unpublished) (explaining "a strategic disagreement" falls short of the good-cause threshold"). Complaints about counsel—even those claiming counsel are "ineffective" for "not structur[ing] a defense" as requested by a criminal

7

defendant—do not constitute good cause for substitution of counsel. *Padilla*, 819 F.2d at 956.

Mr. Roper appears willing and able to communicate with his counsel. In fact, he has numerous thoughts about what his lawyers should do—such as: (1) hire an independent fingerprint expert, (2) present surveillance footage, and (3) submit to a full fingerprint examination. *See* **Doc. 90 at 2–4**. These complaints (or suggestions) do not demonstrate a total breakdown in communication. Rather, these are quite clearly disagreements over the litigation strategy.[9]

Ultimately, Mr. Roper failed to put forth evidence of "a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible." *Lott I*, 310 F.3d at 1249. In fact, Mr. Roper did not provide any specific examples of the alleged breakdown in communication (other than the explaining to the Court what he thinks his lawyers should be doing[10]). This is not enough. Likewise, losing a motion is not a legitimate reason for replacing counsel either. *See* **Hrg. Tr. at 178–89** (stating "we are not going to keep doing down that road" every time Mr. Roper "loses" a motion).

---

[9] The Court's conclusion on this matter is extremely well-settled. *See, e.g., Rodriguez*, 2024 U.S. App. LEXIS 8365, at *6 (explaining "mere strategic disagreement . . . is not enough to show good cause" (cleaned up)); *Holloway*, 939 F.3d at 1101 ("[S]trategic disputes do not establish conflicts that support total breakdown in communication claims."); *United States v. Williamson*, 859 F.3d 843, 860 (10th Cir. 2017) (same); *Maxton*, 666 F. App'x at 757 (same); *United States v. Dunbar*, 718 F.3d 1268, 1276 (10th Cir. 2013) (same); *United States v. Stewart*, 378 F. App'x 773, 777 (10th Cir. 2010) (unpublished) (same); *United States v. Turner*, 365 F. App'x 918, 928 (10th Cir. 2010) (unpublished) (same); *United States v. Hutchinson*, 573 F.3d 1101, 1025 (10th Cir. 2009) ("Strategic disagreements, while no doubt unhelpful to a productive working relationship, are not sufficient to show a complete breakdown in communication." (cleaned up)); *United States v. Vindel-Montoya*, 280 F. App'x 795, 799 (10th Cir. 2008) (unpublished) (same); *United States v. Armstrong*, 183 F. App'x 711, 713 (10th Cir. 2006) (unpublished) (noting there must be "a complete breakdown of communication or an irreconcilable conflict" between "a defendant and his attorney"); *Lott II*, 433 F.3d at 725 ("This strategic disagreement is not sufficient to show a complete breakdown in communication."); *Porter*, 405 F.3d at 1140 (same); *Lott I*, 310 F.3d at 1249 (same).

[10] The Court will not cite the specific strategic disagreements stated by Mr. Roper on the record—instead only those grievances in Mr. Roper's un-sealed Motion (**Doc. 90**) are referenced herein. Suffice it to say, he can—and does—communicate with counsel.

Whatever disagreements exist are wholly focused on how best to litigate this case. *See generally* **Doc. 93; Hrg. Tr.** But, as explained on the record, Mr. Roper does not control the entire trial strategy. *See United States v. Snyder*, 787 F.2d 1429, 1433 (10th Cir. 1986); *see also infra* n.11; **Doc. 93**. Thus, such disagreements do not warrant appointing new counsel.

This factor weighs against him.

### D. Did Mr. Roper "substantially and unreasonably" contribute to the communication breakdown

Finally, the Court looks to see if Mr. Roper "substantially and unreasonably contributed" to the communication breakdown. *Byrum*, 567 F.3d at 1266 (citation omitted); *see also Romero*, 215 F.3d at 1113 (using the phrase "substantially and unjustifiably"). Here, it appears that the request for new counsel is simply a visceral reaction to receiving bad news (*i.e.*, the denial of his suppression motion). Clearly, this does not equate to good cause. *See supra* n.9 (citing cases). If there has been a breakdown in communication—it is because of Mr. Roper and not due to any conduct of counsel. In his Motion (and at the hearing), Mr. Roper voiced his opinion on what issues, testimony, and witnesses defense counsel should have argued. But defense counsel are not required to "blindly follow[]" a defendant's instructions. *Padilla*, 819 F.2d at 956. This means that Mr. Roper cannot manufacture[11] a breakdown in communication on this basis simply to attain new counsel. *Holloway*, 939 F.3d at 1102.

Like the defendant in *United States v. Williamson*, No. 13-cr-20011, 2014 U.S. Dist. LEXIS 73743 (D. Kan. May 30, 2014), *aff'd* 859 F.3d 843 (10th Cir. 2017), Mr. Roper was originally appointed a Federal Public Defender ("FPD"). *See* **Doc. 9**. But the FPDs did not last

---

[11] Although the Court granted Mr. Roper's first Motion to Appoint New Counsel (**Doc. 35**), there are similarities between the first motion and this second motion that support the Court's denial here. *Compare* **Doc. 35**, *with* **Doc. 90**. In both *pro se* requests for new counsel, Mr. Roper complains that he would have done things differently than counsel. He also complains that his lawyer should've done X, Y, or Z. He is, in the Court's view, manufacturing a conflict.
    If Mr. Roper wants to represent himself, he can. That is his right. *See generally Faretta v. California*, 422 U.S. 806 (1975). But there is no right to hybrid representation. *See United States v. Hale*, 762 F.3d 1214, 1219 (10th Cir. 2014); *United States v. Couch*, 758 F. App'x 654, 656 (10th Cir. 2018).
    Likewise, Mr. Roper is not entitled to appointed counsel of his choice. Mr. Roper has a right to counsel under the Sixth Amendment. *See Gideon v. Wainwright*, 372 U.S. 335, 342–45 (1963); *United States v. Warrington*, 78 F.4th 1158, 1164 (10th Cir. 2023). But the right to "counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006); *see also United States v. Mendoza-Salgado*, 964 F.3d 993, 1014–15 (10th Cir. 1992).

long in either case; and new counsel were appointed. Mr. Roper, much like Williamson, is now unhappy with his second court-appointed counsel. And, much like Williamson, Mr. Roper also submitted "a pro se motion for new counsel . . . right before trial." *Williamson*, 2014 U.S. Dist. LEXIS 73743, at *2–3. This Court, like the trial court in *Williamson*, concludes that Mr. Roper: "has not shown a complete breakdown of communication . . . to warrant substitution of counsel," (2) has only identified matters of strategic disagreement, and (3) "substantially (if not completely) and unreasonably contributed to any communication problems." *Id.* at *5–6 & n.2.

In sum, the Court finds that Mr. Roper substantially and unreasonably contributed to the breakdown in communication. *See* **Hrg. Tr. at 108–21** (highlighting that the Court previously told Mr. Roper that "he needed to make [this new lawyer-client] relationship work" after his first "motion for new counsel" was granted). This factor weighs against him.

* * *

On balance, the *Romero* factors weigh against substituting counsel. Mr. Roper's refusal to cooperate with his attorneys does not constitute good cause for substituting counsel. Especially given that he is the reason for the communication issues about which he complains. Unsurprisingly, then, the Court denies Mr. Roper's request for new counsel (and defense counsel's oral motion to withdraw).

## II. Speedy Trial Implications of Appointing New Counsel

### *A. Procedural history and timeline*

Some additional background is necessary to explain the importance of this second (and interrelated) point.

After being indicted and arrested back in November 2023 (**Docs. 2 & 3**), Mr. Roper's case was set for trial. The original trial date was January 8, 2024 (**Doc. 15**). In December, his

then-defense counsel moved to continue the trial setting (**Doc. 23**). The Court granted this unopposed motion (**Doc. 24**) and reset the trial date.

In February 2024, Mr. Roper requested new counsel (**Doc. 35**). Thereafter, his then-defense counsel filed a motion to withdraw. Both motions were granted (**Doc. 42**), and new counsel was appointed (**Docs. 42 & 43**). In Mr. Roper's February Motion for New Counsel (**Doc. 35**) he raised speedy trial concerns. *Id.* **at 4–6**.[12]

The day after current trial defense counsel was appointed, she filed an unopposed motion to continue trial (**Doc. 46**). Given the recent appointment, the Court once again granted this request (**Doc. 49**) and reset trial for June 2024. Around this same time, Mr. Roper filed a Motion to Dismiss for Speedy Trial Violations (**Doc. 47**). This *pro se* Motion was stricken because Mr. Roper was represented by counsel. *See* **Doc. 48** (citing D.N.M.LR-Cr. 44.2). Nevertheless, the filing helps depict a theme; that is, Mr. Roper's desire for this case to be resolved expeditiously.

Two months after filing the first motion to continue, trial defense counsel filed another unopposed motion to continue (**Doc. 52**). Once again, the Court granted the continuance (**Doc. 54**). The June 2024 trial was vacated, and trial was reset for August 5, 2024. ***Ibid.***

Around this same time, defense counsel filed a Motion to Dismiss for Speedy Trial Violations (**Doc. 57**). But yet, two weeks later, defense counsel filed her third motion to continue (**Doc. 70**). Once again, the Court granted the motion (**Doc. 82**). Trial was then set for October 15, 2024 (**Docs. 85 & 89**).

In the interim, the Court issued written rulings resolving the Motion to Dismiss and the Motion to Suppress (**Docs. 80 & 86**). Days later, Mr. Roper requested new counsel (**Doc. 90**).

---

[12] These concerns are substantially similar to those raised by current counsel in the Motion to Dismiss (**Doc. 57**). Ultimately, the Court denied the motion (**Doc. 80**), finding that Mr. Roper's statutory speedy trial rights were not violated.

### *B. Speedy trial vis-à-vis appointing new counsel*

Mr. Roper filed this Motion to Appoint New Counsel (**Doc. 90**) on August 20, 2024. As it stands, six months have passed from the last time he filed a Motion for new counsel (**Doc. 35**). Logically, then, if the instant motion were granted, the Court anticipates it would take approximately six months before new counsel would be ready for trial. Assuming that timeline is accurate, then trial would not occur until March 2025—more than sixteen months post-Indictment.

Mr. Roper's requested course of action flies in the face of the Speedy Trial Act ("STA"). That is because the purpose of the STA is multifaceted—it aims to strike the proper balance between the "ends of justice and the best interest of the public and the defendant[] in a speedy trial." *United States v. Williams*, 511 F.3d 1044, 1058 (10th Cir. 2007).

This Court cannot, in good conscience, continue this matter in the ends of justice. *See* 18 U.S.C. § 3161(h)(7)(A); *see also United States v. Toombs*, 574 F.3d 1262, 1268–69 (10th Cir. 2009) (listing the factors a judge must consider). First, the Court has already granted four continuances. Second, the case is not "so unusual or so complex" as to require additional time. And third, current defense counsel and the United States are prepared for trial. Plus, the ends of justice continuance should be "rarely used." *United States v. Rushin*, 642 F.3d 1299, 1303 (10th Cir. 2011). Here, it has already been appropriately used to provide counsel with time to: review discovery, continue an investigation of the case, file pretrial motions, explore plea negotiations, and prepare for trial. *See* **Doc. 24 at 1; Doc. 49 at 1; Doc. 54 at 1**. Current counsel has been preparing this case for six months—which is more than sufficient for a run-of-the-mill Hobbs Act robbery case. And Hobbs Act robbery is not "so complex" as to warrant any more additional time.[13]

---

[13] *See United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) ("[L]ess delay is tolerated for ordinary street crimes, and more delay for complex conspiracy charges."); *Love v. Raemisch*, 620 F. App'x 642, 646 (10th Cir. 2015) (unpublished) (defining a robbery case as "run-of-the-mill"); *United States v. Lewis*, 565 F.2d 1248, 1253 (2d Cir. 1977 (affirming the district court's denial of a continuance in "a simple bank

Point blank: further continuances are not warranted. And this speedy trial consideration factors into the Court's analysis with respect to the timeliness (or lack thereof) with respect to the *Romero* analysis. *See supra* ¶ I.A.

## CONCLUSION

Mr. Roper is unhappy with counsel; but it appears he will be unhappy with any defense lawyer. Despite their strategic disagreements, Mr. Roper and his counsel can still have meaningful communication. Plus, as the Court noted above, the breakdown in communication is wholly attributable to Mr. Roper—which weighs heavily against appointing new counsel.

**IT IS THEREFORE ORDERED** that Mr. Roper's *pro se* motion to appoint new counsel is **DENIED**. So, too, is the oral motion to withdraw. Ms. Anderson and Mr. Chadborn will continue representing Mr. Roper in this matter. Trial will begin, as scheduled, on October 15, 2024.

**IT IS SO ORDERED**.

/s/
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

---

robbery" case); *United States v. DeFreitas*, 410 F. Supp. 241 (D. N.J. 1976) (finding "an armed bank robbery case" is not complex); *United States v. Mack*, No. 09-cr-98, 2011 U.S. Dist. LEXIS 102586 (E.D. Tenn. Aug. 9, 2011) (explaining a Hobbs Act robbery case is not "unusual or complex"); *cf.* 18 U.S.C. § 3161(h)(7)(B)(ii). This is a simple case. There is no reason to extend this case beyond the one-year mark for establishing "presumptive prejudice." *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992); *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004) (same); *cf. United States v. Koller*, 956 F.2d 1408, 1414 (7th Cir. 1992) (explaining "a delay of 8 months" in an armed robbery case was presumptively prejudicial).