# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                   No. 1:23-cr-1617-WJ

JASON ROPER,

     Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION TO EXCLUDE and
## DENYING REQUEST FOR A *DAUBERT*[1] HEARING

**THIS MATTER** comes before the Court on Defendant Roper's Motion to Exclude (**Doc. 102**) as well as the United States' Response (**Doc. 105**). Roper argues that the United States' fingerprint identification expert's proposed testimony is inadmissible. The Court disagrees. Having reviewed the relevant pleadings, taken judicial notice[2] of the docket, and considered the applicable law, the Court hereby **DENIES** Roper's Motion to Exclude.

## LEGAL STANDARD

A district court's gatekeeping function involves a two-step analysis. *See United States v.*

---

[1] *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[2] It is axiomatic that a trial court may take judicial notice of its own docket. *See United States v. Smalls*, 605 F.3d 765, 768 n.2 (10th Cir. 2010) (recognizing a court may take judicial notice of docket information).

     On August 6, 2024, this Court held an evidentiary hearing on Roper's Motion to Suppress. Lujan testified—and a transcript exists. *See* **Doc. 99** ("Tr."). Thus, the Court has already heard a sizable chunk of her testimony. Additionally, the United States previously filed a Rule 16 expert disclosure (**Doc. 95**)—which contains Lujan's curriculum vitae ("CV"). *See* **Doc. 95-1**.

     As it stands, the Court has enough evidence to perform its gatekeeping duty in assessing Lujan's qualifications, as well as the relevance and reliability of her proposed testimony. Thus, a hearing is not required (**Doc. 105 at 11–13**). *See, e.g., United States v. Turner*, 285 F.3d 909, 913 (10th Cir. 2002); *United States v. Nichols*, 169 F.3d 1255, 1263 (10th Cir. 1999); *United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997).

*Nacchio,* 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (Holmes, J.). First, a court must determine whether the expert is sufficiently qualified by "knowledge, skill, experience, training, or education" to render an opinion. Fed. R. Evid. 702. Second, if the expert is qualified, the district court must determine whether the expert's proposed testimony is reliable. *See United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir. 2014). Reliability is viewed by assessing the underlying reasoning and methodology, as set forth in *Daubert. See United States v. Vann*, 776 F.3d 746, 758 (10th Cir. 2015) (citation omitted). An expert is "required to possess such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *Graham v. Wyeth Labs.*, 906 F.2d 1399, 1408 (10th Cir. 1990) (citation omitted); *see also LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (same).

Despite this gatekeeping role, the Court is cognizant of the liberal standard for admitting expert testimony. *See United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995). If the Court concludes that: (1) Lujan is qualified, and (2) her testimony is reliable and will assist the jury—it is admissible.

The first prong is fact specific. But for the second prong, this Court still looks to its higher court for guidance. The Tenth Circuit case law is quite clear—such testimony is admissible. *See United States v. Baines*, 573 F.3d 979, 991 (10th Cir. 2009) (noting "the general acceptance of fingerprint analysis"); *United States v. Cruz*, 189 F. App'x 725 (10th Cir. 2006) (affirming admission of fingerprint identification testimony); *United States v. Ward*, 96 F. App'x 615, 620 n.5 (10th Cir. 2004) (unpublished) ("Circuits that have addressed the admissibility of fingerprint evidence have determined it is scientifically reliable."), *rev'd on other grounds United States v. Booker*, 543 U.S. 220 (2005); *Turner*, 285 F.3d at 912–15 (affirming district court's ruling on

admissibility of a fingerprint expert). In fact, the Tenth Circuit routinely upholds fingerprint comparison/identification expert testimony and the Tenth Circuit is by no means an outlier among the other circuit courts of appeals.[3] Moreover, the several districts within the Tenth Circuit routinely deny defense motions to exclude fingerprint analysis on the very grounds asserted by Roper.[4]

What remains, then, is whether Lujan is qualified to render such testimony.

## DISCUSSION

Roper argues that the Court should exclude Lujan's testimony because: "her anticipated testimony (1) does not meet the admissibility requirements in Rule 702, and (2) her conclusion that Jason Roper was the source of the latent print collected from the scene of a robbery on August 14, 2022, and related opinions about fingerprint analysis overstates what the methodology reliably supports." **Doc. 102 at 1**. Roper further argues that the ACE-V methodology "is subjective." *Id.* **at 4**. Lastly, Roper contends that Lujan impermissibly "proposes to . . . assert[]" with "absolute or one hundred percent certainty" that he is the source of the latent print. *Id.*

The United States frames Roper's argument as follows: "[Roper] does not argue that Ms.

---

[3] Upon review, it appears that every court of appeals to consider the admissibility of fingerprint identification has determined the ACE-V methodology is reliable and admissible. *See, e.g., United States v. Pena*, 586 F.3d 105, 109–11 (1st Cir. 2009); *United States v. Mitchell*, 365 F.3d 215, 246 (3d Cir. 2004); *United States v. Gomez*, 2023 U.S. App. LEXIS 13529 (4th Cir. June 1, 2023) (unpublished); *United States v. Hatcher*, 513 F. App'x 581, 584–85 (6th Cir. 2013) (per curiam) (unpublished); *United States v. Herrera*, 704 F.3d 480, 484–87 (7th Cir. 2013); *United States v. Blake*, 66 F.4th 1165 (8th Cir. 2023); *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183 (9th Cir. 2019) (per curiam); *United States v. Abreu*, 406 F.3d 1304, 1307 (11th Cir. 2005) (per curiam); *United States v. Straker*, 800 F.3d 570 (D.C. Cir. 2015) (per curiam).
[4] The following district courts have reached the same outcome as this Court—concluding that the ACE-V methodology is sufficiently reliable and has achieved overwhelming acceptance by experts. *See, e.g., United States v. Mercado-Gracia*, No. 16-cr-1701, 2018 U.S. Dist. LEXIS 192973 (D.N.M. Nov. 13, 2018) (Herrera, J.), *aff'd* 989 F.3d 829 (10th Cir. 2021); *United States v. Casaus*, No. 14-cr-136, 2017 U.S. Dist. LEXIS 212945, at *4–5 (D. Colo. Dec. 29, 2017) (Arguello, J.); *United States v. Beasley*, No. 13-cr-10112, 2016 U.S. Dist. LEXIS 15099, at *55–56 (D. Kan. Feb. 8, 2016) (Marten, J.); *United States v. McCluskey*, No. 10-cr-2734, 2013 U.S. Dist. LEXIS 202828, at *42 (Herrera, J.); *United States v. Myers*, No. 12-cr-196, 2012 U.S. Dist. LEXIS 174916, at *8–15 (N.D. Okla. Dec. 11, 2012) (Eagan, J.); *United States v. Gutierrez-Castro*, 805 F. Supp. 2d 1218, 1234 (D.N.M. 2011) (Browning, J.).

Lujan's proposed testimony does not meet the requirement of Rule 702 . . . [to] help a jury understand the fingerprint evidence . . . . [Roper] argues, instead, that this Court should exclude Ms. Lujan's testimony because . . . [it] 'does not meet the admissibility requirements in Rule 702(b)–(d),' and because 'her conclusion . . . overstates what the methodology reliably supports.'"
**Doc. 105 at 5**.

These arguments are not persuasive.

Roper supplies no case law[5] supporting his argument against the admission of fingerprint evidence. And the relevant Tenth Circuit case law is clear—fingerprint identification is reliable, admissible, and has an "impressively low," error rate. *Baines*, 573 F.3d at 991. For these reasons, and others that follow, the Court concludes Lujan is qualified, *see infra* ¶ I, and her testimony is reliable. *See infra* ¶ II.

**I. Lujan is Qualified**

First, the Court must determine if Lujan has "sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999). Upon review of her CV and prior testimony, the Court finds Lujan is qualified. *See supra* n.1 (citing **Docs. 95-1 & 99**).

Lujan has a bachelor's degree in criminal justice (**Doc. 95-1 at 1**). And she has spent over three decades in law enforcement. ***Id.*** Specific to her testimony in this case, Lujan worked as a

---

[5] To be fair, counsel argues that "the ACE methodology has been called into question," by "a Maryland state court." **Doc. 102 at 9**. But counsel does not cite the Maryland case.

For what it's worth, the Court located the case: *State v. Rose*, No. K06-0545, 2007 Md. Cir. Ct. LEXIS 14 (Balt. Cnty. Cir. Ct. Oct. 19, 2007) (holding that the ACE-V methodology of latent fingerprint identification was "a subjective, untested, unverifiable identification procedure"). But this trial court decision was overturned by the Maryland Court of Special Appeals in 2009. *See Markham v. State*, 984 A.2d 262, 276 (Md. Ct. Spec. App. 2009) ("Maryland has held, for many years, that fingerprint identification evidence is reliable and admissible."; *see also Mayhew v. State*, 2015 Md. App. LEXIS 208 (Md. Ct. Spec. App. 2015) (unpublished) (same); *Boyer v. State*, 2020 Md. App. LEXIS 605 (Md. Ct. Spec. App. 2020) (unpublished) (same).

"Forensic Scientist – Latent Fingerprint Examiner" from 2014–23. *Id.* During this time, Ms. Lujan completed several hundred hours of advanced training.[6] She is a member of the "International Association for Identification," **Doc. 95-1 at 4**, and has given numerous presentations on latent print identification. *Id.* **at 5**. Finally, Lujan has testified as an expert[7] before. **Doc. 95 at 2** (citing *State v. Padilla*, No. D-202-CR-2022-00526); *see also* Fed. R. Crim. P. 16(b)(1)(C)(iii).

Lujan is sufficiently qualified to testify as an expert witness in the field of latent fingerprint examination.

## II. Lujan's Testimony is Reliable and Admissible

"[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether the particular expert testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152. But if "the expert testimony has the earmarks of reliability, the evidence is then admitted and subjected to the kind of adversarial attack that facilitates the jury's central functions of deciding what weight to attribute to evidence and which witnesses to believe." *United States v. Brooks*, 678 F. App'x 755, 758 (10th Cir. 2017) (unpublished) (quoting CHARLES ALAN WRIGHT ET AL., 29 FED. PRAC. & PROC. EVID. § 6262 (2d ed. 2016)). This is in line with the reasoning of *Daubert*—which emphasizes that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596.

First, the Court undertakes a *Daubert* analysis—to demonstrate with specific findings that

---

[6] This is not an exhaustive list by any means; but the Court highlights the fact that Lujan completed the following trainings: (1) 16 hours in "Logical Latent Analysis" in 2023, (2) 40 hours in "Advanced ACE-V" in 2022, (3) 40 hours in "Comprehensive Latent Print Comparison" in 2021, and (4) 16 hours in "Common Sense Digital Imaging for Latent Print Examiners" in 2020. *See* **Doc. 95-1**.

[7] Lujan testified that she "did quite a few" federal cases, too—with her last time being qualified as an expert being "in 2020, February of 2020." **Tr. at 76:2–15**. *See United States v. Overton*, No. 17-cr-3564, **Doc. 139 at 111** ("I am going to qualify her as an expert in the area of latent fingerprint examination.").

it has taken its gatekeeping responsibility seriously. Second, the Court addresses Roper's argument—concluding it pertains to weight, not admissibility.

### A. *Daubert* analysis

Although not a "definitive checklist or test," the factors enumerated in *Daubert* are helpful for a court when assessing the reliability of an expert's methodology. *See Kumho Tire Co.*, 526 U.S. at 150.

The first *Daubert* factor is whether the theory has been tested. The Court is aware that numerous studies have been published regarding the rate of error in fingerprint analysis (**Doc. 105 at 12**). The second *Daubert* factor is whether the methodology has been subjected to peer review and publication. Lujan testified that her methodology is peer reviewed (**Tr. at 51:6–52:3**). That's the "V" in the ACE-V method. *See* **Tr. at 36:3–11**. More broadly, "fingerprint identification has been peer reviewed and published in scholarly journals." *United States v. Aceituno*, 699 F. Supp. 3d 179, 190 (D.N.H. 2023). The third factor is the known or potential error rate. The United States provides evidence that the "false positive rate [is] 0.1%." **Doc. 105 at 8–9** (citing **Doc. 83-2**). On the whole, "peer-reviewed literature in the field suggests the error rate is less than 1%." *United States v. Moore*, No. 23-cr-47, 2024 U.S. Dist. LEXIS 180996, at *12 n.6 (S.D. Ohio Oct. 3, 2024) (citing study); *cf. Baines*, 573 F.3d at 991 ("[T]he known error rate remains impressively low."). So far, each factor weighs in favor of admissibility.

The fourth factor in *Daubert* is the existence and maintenance of standards. This is the subjective aspect with which Roper takes issue.  However, Lujan testified that the extensive training and testing makes the subjective analysis more exacting. The ACE-V system itself is a procedural standard that relies on the subjective judgment of the examiner but there are accepted standards for following the ACE-V method. This factor weighs both for and against admissibility.

The fifth and final *Daubert* factor is whether the method has achieved general acceptance in the scientific community. "Fingerprinting is far from junk science—it can be tested and peer reviewed and is generally accepted by the relevant scientific community." *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018); *United States v. Scott*, 403 F. App'x 392, 398 (11th Cir. 2010) (per curiam) (unpublished) ("The ACE-V method has been in use for over 20 years, and is generally accepted within the community of fingerprint experts."); *Baines*, 573 F.3d at 991 (observing "overwhelming acceptance"). This factor also weighs in favor of admissibility.

\* \* \*

The Court's *Daubert* analysis overwhelming favors admissibility. Thus, Roper's challenge to Lujan's testimony goes to weight, not admissibility.

### B. Analysis of Roper's argument

Despite the above analysis, Roper argues that Lujan's expert opinion is not based on sufficient facts, data, or methodology to establish its reliability. He takes particular issue with the "subjective" nature of the ACE-V methodology. **Doc. 102 at 4**. Roper also argues that "the distortion of the analyzed print and insufficiency of the other ridge details throughout the latent print card call into question whether the analyzed latent print was of sufficient quality or had sufficient detail to continue through the ACE method's analysis and comparison phases to conclude that Mr. Roper was its source." *Id.* **at 9**.

An expert's opinion must "reflect[] a reliable application of principles and methods to the facts of the case." Fed. R. Evid. 702(c)–(d). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. The subjective nature of comparing prints does not mean this testimony is unreliable.

7

"Fingerprint comparison is a well-established method of identifying persons, and one we have upheld against a *Daubert* challenge." *United States v. Avitia-Guillen*, 680 F.3d 1253, 1260 (10th Cir. 2012).

"Although the ACE-V system is a procedural standard relying on the subjective judgment of the examiner, there are accepted standards for following the ACE-V method, training on the system, and certification processes within the fingerprint examiner community to help ensure quality." *Mercado-Gracia*, 2018 U.S. Dist. LEXIS 192973, at *16. Ironically, Lujan testified that she has never had a "false positive" result—but, rather, only "false negatives." **Tr. at 52:1–54:10**. But this testimony makes sense given the nature of fingerprint identification. As the Seventh Circuit stated:

> [E]rrors in fingerprint matching by expert examiners appear to be very rare. Of the first 194 prisoners in the United States exonerated by DNA evidence, none had been convicted on the basis of erroneous fingerprint matches, whereas 75 percent had been convicted on the basis of mistaken eyewitness identification . . . . [T]hough the matching process is judgmental rather than scientifically rigorous because it depends on how readable the latent fingerprint is and also on how distorted a version of the person's patent fingerprint it is . . . . Ultimately the matching depends on "subjective judgments by the examiner," . . . but responsible fingerprint matching is admissible evidence, in general and in this case.

*Herrera*, 704 F.3d at 487 (Posner, J.) (internal citations omitted). In light of Tenth Circuit precedent, as well as every other court of appeals, there can be little dispute that Lujan's testimony is reliable (and admissible).

In his motion, Roper argues that the latent print was distorted and thereby insufficient for analysis (**Doc. 102 at 9**). But Lujan testified the print was sufficient for comparison. **Tr. at 42:19– 43:1 & 74:25–75:2**. Lujan's method is sufficiently reliable to meet *Daubert* meaning it's admissible under Rule 702. Any questions about distortion or insufficient ridge detail are appropriate for cross-examination—but do not warrant exclusion. *See United States v.*

*Aigbevbolle*, 772 F.2d 652, 654 (10th Cir. 1985) (finding the witness's testimony was "sufficiently reliable to cross the admissibility threshold," but noting that defense counsel "was free to argue that it should have been given little weight"); *United States v. Cavely*, 318 F.3d 987, 998 (10th Cir. 2003) (same).

Because the average juror is unaware of fingerprint identification, Lujan's expert testimony will prove helpful. Such testimony falls squarely within the gambit of Rule 702. Given Lujan's qualifications—the reliability and helpfulness of her testimony mean it's admissible.

* * *

With these principles (and case law) as a guide, the Court sets two parameters for the anticipated trial testimony.

First, Lujan may not testify that the latent print is a "one hundred percent" match. *See* **Doc. 102 at 4 & 12–13**. Conveniently, the United States explains no such testimony will be elicited (**Doc. 105 at 10**). And, for what it's worth, Lujan did not testify to "one hundred percent" certainty during the hearing. *See* **Tr. at 75:3–17**. Thus, this "issue" raised by Roper is now a non-issue (especially so, given this Court's ruling on the matter).

Second, the Court will allow Lujan to testify as to "her opinion that fingerprint analysis is more reliable that forensic DNA analysis" and "that she has never made a false positive identification." **Doc. 102 at 13**. As discussed at the hearing, Lujan believes fingerprint analysis is more reliable because of the "twin" theory (**Tr. at 56:14–57:25**). *See United States v. Roper*, __ F. Supp. 3d __, 2024 U.S. Dist. LEXIS at *8–9 (D.N.M. Aug. 7, 2024) ("Lujan testified that fingerprinting is more reliable because identical twins have the same DNA but different fingerprints.").[8] This is true—at least with respect to how Lujan answered the question—and,

---

[8] Once again, the Court cites to *United States v. Peters*, No. 91-cr-395, 1995 U.S. Dist. LEXIS 20950, at *14 n.8 (D.N.M. Sept. 7, 1995) and *Harvey v. Horan*, 285 F.3d 298, 304 n.1 (4th Cir. 2002) (Luttig, J.,

therefore, not misleading. Additionally, any qualms over the fact that Lujan "has never had a false-positive identification" is not misleading, as alleged (**Doc. 102 at 13**). It's true (or at least consistent with her testimony). **Tr. at 52:1–54:10**. The Court declines to limit Lujan's testimony in these ways, as requested by Roper.

## CONCLUSION

The Court concludes Lydia Lujan is qualified by "knowledge, skill, experience, training, [and] education" to provide expert opinion testimony in this case. Fed. R. Evid. 702. Her proposed testimony is reliably based upon significant experience in the fingerprinting field—and is reliably applied to the facts of this case.

**IT IS THEREFORE ORDERED** that Roper's Motion to Exclude (**Doc. 102**) is **DENIED**.

**IT IS FUTHER ORDERED** that Roper's request for a pre-trial *Daubert* hearing on the subject of fingerprint science is also **DENIED**.

/s/
_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

---

respecting denial of rehearing en banc). In both cases, the courts explain that DNA testing is inaccurate with respect to identical twins.